UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| TAT TOHUMCULUK, A.S., a Turkish company,<br><br>  Plaintiff,<br><br>  v.<br><br>H.J. HEINZ COMPANY, a Pennsylvania corporation registered to do business in California, and HEINZSEED, a division of H.J. HEINZ COMPANY,<br><br>  Defendants. | NO. CIV 13-0773 WBS KJN<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS |
|---|---|

----oo0oo----

Plaintiff Tat Tohumculuk, A.S., a Turkish company, brings this suit against H.J. Heinz Company L.P. ("Heinz"), a Pennsylvania corporation registered to do business in California, and Heinzseed, a division of Heinz, arising out of an alleged agreement to distribute tomato seed in Turkey.[1]  Presently before

---

[1] Defendant Heinz is erroneously named in the complaint as only "H.J. Heinz Company."

1

the court is defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

I.   Factual and Procedural Background

Plaintiff is a Turkish company involved in the business of purchasing and selling produce seed, as well as tomato paste and other food products. (Compl. ¶ 3.) Defendant Heinz is a global commercial food conglomerate, whose subsidiary, defendant Heinzseed, is located in Stockton, California. (Id. ¶¶ 4-5.) Heinzseed breeds proprietary tomato seed varieties for global sale. (Id.)

Plaintiff alleges that in 2000, defendants "orally engaged" plaintiff "to exclusively test, register, introduce, and then market and sell" defendants' tomato seed varieties in Turkey. (Id. ¶ 7.) New seed varieties must be registered with the Turkish Department of Agriculture, a process that plaintiff claims generally takes over two years. (Id.) Plaintiff alleges that over the course of eleven years, plaintiff registered nineteen of defendants' tomato seed varieties, at the cost of $300,000. (Id. ¶¶ 7-10.)

Plaintiff alleges defendants repeatedly represented to third parties that plaintiff was defendants' "exclusive supplier" in Turkey, (id. ¶ 11), and that the parties "had an oral understanding" that the distribution relationship "would only be terminated for cause," (id. ¶ 17). In particular, plaintiff contends that Claudio Leggieri, allegedly Heinzseed's Paris-based international sales manager, made repeated representations between 2009 and 2011 that the sole cause for terminating would

1  be plaintiff's "fail[ure] to promptly pay" for purchased tomato
2  seed.  (Id.)
3          However, plaintiff alleges that on at least four
4  specific instances between 2009 and 2011, Leggieri made comments
5  revealing discriminatory views toward Muslims and people of
6  Turkish descent.  (Id. ¶ 23.)  Plaintiff claims this bias led to
7  defendants' abrupt termination of the distribution arrangement on
8  August 4, 2011.  (Id. ¶¶ 18, 23.)  Plaintiff maintains defendants
9  never provided a justification for the termination, but rather
10 diverted business to a new supplier run by a Christian of
11 European descent.  (Id. ¶ 20.)
12         On April 19, 2013, plaintiff filed a Complaint, (Docket
13 No. 2), which defendants moved to dismiss on May 30, 2013.
14 (Docket No. 12.)  On July 12, 2013, the court approved a
15 stipulation to allow plaintiff to file a first amended complaint
16 ("FAC").  (Docket No. 22.)  Plaintiff filed the FAC on July 29,
17 2013.  (Docket No. 23.)
18         The FAC brings claims for: (1) declaratory relief; (2)
19 breach of contract; (3) breach of implied covenant; (4) unjust
20 enrichment; (5) intentional interference with prospective
21 economic advantage; (6) trade libel; and (7) violation of
22 California's Unfair Competition Law ("UCL"), Cal. Bus. & Profs.
23 Code § 17200 et seq.  (Docket No. 23.)  Defendants move to
24 dismiss the Complaint for failure to state a claim upon which
25 relief can be granted pursuant to Rule 12(b)(6).  (Docket No.
26 24.)
27 II.  Legal Standard
28         On a motion to dismiss, the court must accept the

allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). To survive a motion to dismiss, a plaintiff needs to plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556-57).

III. Discussion

    A.   Declaratory Judgment

"A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action." Mangindin v. Wash. Mut. Bank, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009); see also StreamCast Networks, Inc. v. IBIS LLC, No. CV 05-04239 MMM (EX), 2006 WL 5720345, at *4 (C.D. Cal. May 2, 2006) (listing numerous cases dismissing duplicative declaratory relief claim because determination of breach of contract claim resolved questions regarding contract interpretation).

Plaintiff's first cause of action seeks a declaration that defendants "had no right to unilaterally terminate the distribution relationship without due notice, justification or cause"; that plaintiff's "distributorship would only be terminated for cause if [plaintiff] failed to pay for the HEINZ

4

tomato seed in accordance with the invoice terms"; that plaintiff "was entitled to at least 3 years advance notice prior to termination of the distributorship without cause"; and that plaintiff "is entitled to compensation and damages for the wrongful termination." (Compl. ¶ 28.) Plaintiff's remaining contractual claims adequately address these issues. Accordingly, because declaratory relief is duplicative of the breach of contract claims, the court will dismiss plaintiff's claim for declaratory judgment.

      B.    <u>Statute of Frauds</u>

Before addressing plaintiff's breach of contract claim, the court must first decide whether the statute of frauds bars enforcement of the alleged agreement. California's statute of frauds mandates that a contract "that by its terms is not to be performed within a year from the making thereof" is unenforceable "unless [the contract], or some note or memorandum thereof, [is] in writing and subscribed by the party to be charged or by the party's agent." Cal. Civ. Code § 1624(a)(1). "Only those contracts which expressly preclude performance within one year are unenforceable." <u>Multifamily Captive Grp., LLC v. Assurance Risk Managers, Inc.</u>, 578 F. Supp. 2d 1242, 1248 (E.D. Cal. 2008) (Damrell, J.).

Defendants contend that the agreement falls within the statute of frauds because the complaint alleges that the seed registration process in Turkey "generally takes over 2 years," (Compl. ¶ 7), and that it ultimately took an eleven-year period for plaintiff to test, register, and market the Heinz seed in Turkey, (<u>id.</u> ¶ 10). The allegation that seed registration

5

"generally" takes over two years, however, does not make performance within one year impossible. "The fact that performance within one year is not probable under the terms of the agreement does not bring it within the statute of frauds." Lacy v. Bennett, 207 Cal. App. 2d 796, 800-01 (2d Dist. 1962). Further, "that performance may have extended over a greater period than one year does not bring the agreement within the statute." Columbia Pictures Corp. v. De Toth, 87 Cal. App. 2d 620, 634 (2d Dist. 1948). Thus, while it was unlikely that the alleged agreement could be performed within one year--and it was in fact not performed within one year--the statute of frauds does not apply because the agreement did not "expressly preclude performance within one year." Multifamily Captive Grp., 578 F. Supp. 2d at 1248.

### C. Breach of Contract

Defendants next contend that, even if the statute of frauds does not apply, plaintiff does not sufficiently allege an enforceable contract. To plead a claim for breach of contract under California law, a plaintiff must allege: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." Appling v. Wachovia Mortg., FSB, 745 F. Supp. 2d 961, 974 (N.D. Cal 2010) (quoting CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (5th Dist. 2008)). Defendants do not challenge the second and fourth elements.

#### 1. Existence of Contract

A plaintiff may plead the existence of a contract by

6

its legal effect, in which case the "plaintiff must allege the substance of its relevant terms." Frontier Contracting, Inc. v. Allen Eng'g Contractor, Inc., No. CV F 11-1590 LJO DLB, 2012 WL 1601659, at *4 (E.D. Cal. May 7, 2012) (quoting McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457, 1489 (2d Dist. 2006)); see also Khoury v. Maly's of Cal., Inc., 14 Cal. App. 4th 612, 616 (2d Dist. 1994) ("An oral contract may be pleaded generally as to its effect, because it is rarely possible to allege the exact words.").

Plaintiff alleges that the parties agreed in 2000 for plaintiff "to exclusively test, register, introduce, and then market and sell, HEINZ Tomato Seed varieties in Turkey." (Compl. ¶ 7.) According to plaintiff, defendants repeatedly represented that plaintiff was defendants' exclusive supplier of tomato seed varieties in Turkey, as well as defendants' representative and liaison with customers in the Turkish market. (Id. ¶ 11, Exs. D-E.) These allegations--that the parties agreed for plaintiff to test, register, market, and sell defendants' seed in Turkey in return for an exclusive supply of defendants' seed--sufficiently show the "substance of [the agreement's] relevant terms," Frontier Contracting, 2012 WL 1601659, at *4

Further, plaintiff alleges that over eleven years, it purchased over four million dollars of defendants' seed and sold the seed in the Turkish market, a market that plaintiff had spent $300,000 and eleven years to develop. (Id. ¶¶ 15, 17.) These alleged facts of the parties' course of conduct also allow the court to infer the existence of an ongoing distribution agreement. See Varni Bros. v. Wine World, Inc., 35 Cal. App. 4th

7

1  880, 889 (5th Dist. 1995) ("Here appellants had been distributing
2  wine for Wine World for many years.  Their course of conduct
3  implies they had a distribution agreement.").
4          Defendants contend, however, that plaintiff's
5  allegations are insufficiently definite because plaintiff does
6  not allege any term for duration, and because the parties
7  disagree over whether the arrangement could be terminated at will
8  or only for cause.  Although plaintiff "alleged no specific
9  duration of the agreement, the law implies a reasonable term and,
10 even assuming the contract to be terminable at will, requires the
11 giving of reasonable notice prior to termination."  Khoury, 14
12 Cal. App. 4th at 616; see also Zee Med. Distrib. Ass'n v. Zee
13 Med., Inc., 80 Cal. App. 4th 1, 10 (1st Dist. 2000) ("When there
14 is no express term, and the surrounding circumstances and the
15 nature of the contract do not permit the construction of the
16 contract to have an ascertainable term of duration, the contract
17 is usually construed as terminable at will after a reasonable
18 time of duration has elapsed.").  Thus, the absence of a stated
19 term for duration and dispute over the ability of defendant to
20 terminate the agreement do not mean plaintiff fails to allege the
21 existence of an enforceable contract.
22          2.   Defendants' Breach
23          Plaintiff alleges that defendants breached the
24 contract "by refusing to sell [plaintiff] any more seed after
25 August 5, 2011, and by asking [plaintiff] to return any inventory
26 of [defendants'] tomato seed varieties that it had in stock as of
27 August 5, 2011."  (Compl. ¶ 33.)  Plaintiff also alleges that
28 defendants terminated the agreement "without previous notice,

8

1 warning, or discussion." (Id. ¶ 18.)  Although the parties
2 disagree over whether the agreement provided for termination at
3 will or only for cause, as discussed above, even if termination
4 was only for cause defendants still had to provide reasonable
5 notice.  See Khoury, 14 Cal. App. 4th at 616 ("[E]ven assuming
6 the contract to be terminable at will, [the law] requires the
7 giving of reasonable notice prior to termination.").  Here,
8 defendants did not provide any notice prior to terminating the
9 agreement and immediately requested that plaintiff return
10 defendants' seed.  (Id. Ex. R.)  Thus, because plaintiff alleges
11 that defendants terminated the agreement without notice,
12 plaintiff has adequately pleaded breach.[2]

13     Accordingly, because plaintiff has pleaded every
14 element of a breach of contract claim, the court will deny
15 defendants' motion to dismiss that claim.

16   D.   Breach of Implied Covenant

17     "Every contract imposes upon each party a duty of good
18 faith and fair dealing in its performance and its enforcement."
19 Marsu, B.V. v. Walt Disney Co., 185 F.3d 932, 937 (9th Cir. 1999)
20 (quoting Carma Developers, Inc. v. Marathon Dev. Cal., Inc., 2
21 Cal. 4th 342, 371 (1992)) (internal quotation marks omitted).

---

[2] Because the court finds that plaintiff sufficiently alleges defendants breached the agreement by terminating without notice, the court does not need to reach plaintiff's contention that, "under Turkish law, a minimum of 3 years notice is required in order to revoke the distribution rights." (Compl. ¶ 8.) Plaintiff admits that California law governs this underlying dispute. (Pl.'s Opp'n at 7:17-18 (Docket No. 26) ("TAT seeks to apply Turkish laws, customs, and practices only to establish certain implied contract terms; not to establish the governing law to be applied to this dispute.").)

That duty, known as the covenant of good faith and fair dealing, requires "that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." Andrews v. Mobile Aire Estates, 125 Cal. App. 4th 578, 589 (2d Dist. 2005) (quoting Careau Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1393 (2d Dist. 1990)) (internal quotation marks omitted). "[T]he implied covenant is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract." Racine & Laramie, Ltd. v. Dep't of Parks & Recreation, 11 Cal. App. 4th 1026, 1032 (4th Dist. 1992).

Defendants challenge this claim only on the grounds that plaintiff's underlying breach of contract claim fails. As discussed above, plaintiff has adequately plead a breach of contract claim. Accordingly, because defendants do not otherwise contend that plaintiff's breach of implied covenant claim is inadequately pleaded, the court will deny their motion to dismiss plaintiff's that claim.

E. Unjust Enrichment

Plaintiff's fourth cause of action asserts a claim for unjust enrichment. California courts are divided over whether unjust enrichment is a freestanding cause of action or simply a general principle that underlies various legal doctrines and remedies. Compare Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 793 (2d Dist. 2003) (holding there is no cause of action in California for unjust enrichment), with Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723, 726 (2000) (permitting unjust enrichment claim to stand). The Ninth Circuit, however, has

endorsed the former approach, see Bosinger v. Belden CDT, Inc., 358 F. App'x 812, 815 (9th Cir. 2009) (citing Melchior, 106 Cal. App. 4th at 793), as has this court, Randhawa v. Skylux Inc., No. 2:09-CV-02304 WBS DAD, 2012 WL 5349403, at *2 (E.D. Cal. Oct. 26, 2012), and numerous other district courts, see Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc., No. 1:11-CV-00030 AWI SMS, 2011 WL 2414567, at *6 (E.D. Cal. June 8, 2011) (listing cases). Following the weight of this precedent, the court finds unjust enrichment is not freestanding cause of action. Accordingly, the court will grant defendants' motion to dismiss plaintiff's claim for unjust enrichment.

      F.    Intentional Interference with Prospective Economic Advantage

Under California law, the elements of the tort of intentional interference with prospective economic advantage are:

> (1) an economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by the defendant of the existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages to the plaintiff proximately caused by the acts of the defendant.

Conkle v. Jeong, 73 F.3d 909, 918 (9th Cir. 1995) (quoting Blank v. Kirwan, 39 Cal. 3d 311, 330 (1985)).

The interference must be independently wrongful beyond its interfering character, meaning "it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." Edwards v. Arthur Andersen LLP, 44 Cal. 4th 937, 944 (2008) (citations and internal quotation marks omitted). "An act is not independently wrongful merely

because defendant acted with an improper motive." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1158 (2003).

Plaintiff alleges that defendants began contacting plaintiff's customers in Turkey to transfer orders to a new distributor, knowing "these communications would destabilize [plaintiff's] commercial relationships" and "damage [plaintiff's] commercial reputation and pride." (Compl. ¶ 50.) Further, plaintiff claims defendants cut off plaintiff's orders and sought to recover plaintiff's inventory of defendants' seed "in order to make it impossible for [plaintiff] to timely perform its obligations under purchase orders, or anticipated future purchase orders." (Id. ¶ 51.) According to plaintiff, the termination was "based on discriminatory reasons" including a bias against Turkish Muslims, in favor of a new distributor run by European Christians. (Id. ¶ 23.)

Taken as true, these allegations demonstrate only that defendants "acted with an improper motive." Korea Supply Co., 29 Cal. 4th at 1158. Unlike Korea Supply Co., where the defendants engaged in independently wrongful acts in violation of the Foreign Corrupt Practices Act, the FAC here does not allege defendants violated "constitutional, statutory, regulatory, common law, or other determinable legal standard." 29 Cal. 4th at 1159. To the extent plaintiff relies on the statutes named in its UCL claim, these statutes do not apply to the facts alleged here, as will be set forth below. Accordingly, the court will grant defendants' motion to dismiss the intentional interference with prospective economic advantage claim.

G.   Trade Libel

12

1            Plaintiff does not oppose defendants' motion to dismiss
2   its trade libel claim.  Accordingly, the court will grant
3   defendants' motion to dismiss plaintiff's trade libel claim.
4        H.   UCL
5            The UCL prohibits "any unlawful, unfair, or fraudulent
6   business act or practice."  Cel-Tech Commc'ns, Inc. v. L.A.
7   Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999).  "By proscribing
8   'any unlawful' business practice, section 17200 borrows
9   violations of other laws and treats them as unlawful practices
10  that the unfair competition law makes independently actionable."
11  Id. (internal quotation marks omitted).  "A plaintiff must state
12  with reasonable particularity the facts supporting the statutory
13  elements of the violation."  Khoury, 14 Cal. App. 4th at 619.
14  Plaintiff brings claims under the unlawful and unfair prongs of
15  the UCL.
16           Plaintiff asserts two statutory predicates for its
17  claim under the UCL's unlawful prong: 42 U.S.C. § 1981 and
18  California's Unruh Civil Rights Act, Cal Civ. Code § 51.  Section
19  1981 provides that "[a]ll persons within the jurisdiction of the
20  United States shall have the same right in every State and
21  Territory to make and enforce contracts . . . as is enjoyed by
22  white citizens."  42 U.S.C. § 1981(a).  The statute cannot serve
23  as a predicate for plaintiff's UCL claim, however, because it
24  only covers acts of discrimination against persons within the
25  jurisdiction of the United States.  See Ofori-Tenkorang v. Am.
26  Int'l Grp., Inc., 460 F.3d 296, 303-06 (2d Cir. 2006).  In Ofori-
27  Tenkorang, the court dismissed § 1981 claims brought by workers
28  in South Africa even though "the relevant employment contract was

1  initially formed in the United States" and "the relevant
2  discrimination was directed by persons who were themselves in the
3  United States."  Id. at 304.  The statute's "territorial
4  limitation," the court held, "is defined by the location of the
5  subject of the discrimination, not by the location of the
6  decisionmaker."  Id.  Because plaintiff is a Turkish company
7  conducting its operations in Turkey, § 1981 does not apply.
8      The Unruh Civil Rights Act guarantees "full and equal
9  accommodations, advantages, facilities, privileges, or services
10 in all business establishments of every kind whatsoever" to
11 "[a]ll persons within the jurisdiction of this state."  Cal. Civ.
12 Code § 51.  The Unruh Act, too, has limited geographic scope.
13 See Keum v. Virgin Am. Inc., 781 F. Supp. 2d 944, 955 (N.D. Cal.
14 2011) (dismissing section 51 claim alleging discriminatory
15 actions on flight bound for California when discrimination took
16 place outside state).  Plaintiff contends that, because the
17 alleged discrimination was approved by defendants' officers in
18 California, section 51 applies.  (Compl. ¶ 62.)  The plain
19 language of the statute, however, regards access by "persons
20 within the jurisdiction of" California.  Cal. Civ. Code § 51.
21 Plaintiff has not presented any case law, nor is the court aware
22 of any, applying section 51 to alleged discrimination suffered by
23 parties outside California.  The Unruh Act, therefore, does not
24 apply.  Because neither § 1981 nor section 51 apply
25 extraterritorially, plaintiff's claim under the unlawful prong of
26 the UCL fails for lack of statutory predicate.  Cf. Aleksick v.
27 7-Eleven, Inc., 205 Cal. App. 4th 1176, 1185 (4th Dist. 2012)
28 ("When a statutory claim fails, a derivative UCL claim also

1  fails.").

2          Plaintiff also brings a claim under the UCL's "unfair"
3  prong.  "An unfair business practice is one that either 'offends
4  an established public policy' or is 'immoral, unethical,
5  oppressive, unscrupulous or substantially injurious to
6  consumers.'"  McDonald v. Coldwell Banker, 543 F.3d 498, 506 (9th
7  Cir. 2008) (quoting People v. Convalescent Homes, Inc., 159 Cal.
8  App. 3d 509, 530 (4th Dist. 2008)).  The California Supreme Court
9  has criticized these standards as "too amorphous and provid[ing]
10 too little guidance to courts," Cel-Tech, 20 Cal. 4th at 185, and
11 subsequent courts have required claims under this prong to "be
12 'tethered' to specific constitutional, statutory or regulatory
13 provisions."  Gregory v. Albertson's, Inc., 104 Cal. App. 4th
14 845, 854 (1st Dist. 2002).

15         To the extent plaintiff tethers its unfairness claim to
16 § 1981 and section 51, the claim fails for the same reasons set
17 forth above.  Accordingly, because plaintiff does not
18 successfully allege a violation of any underlying statutory
19 provision, the court will grant defendants' motion to dismiss
20 plaintiff's UCL claim.

21         IT IS THEREFORE ORDERED that defendants' motion to
22 dismiss be, and the same hereby is, DENIED with respect to
23 plaintiff's breach of contract and breach of implied covenant
24 claims, and GRANTED in all other respects.

25         Plaintiff has twenty days from the date of this Order
26 to file an amended complaint, if it can cure the defects in its
27 claims consistent with this Order.

28

Dated: November 14, 2013

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE